# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 23-1172V
UNPUBLISHED

|  |  |
|---|---|
| NATALIE PARSONS,<br><br>     Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>     Respondent. | Chief Special Master Corcoran<br><br>Filed: March 22, 2024 |

*Andrew D. Downing*, Downing, Allison, and Jorgenson, Phoenix, AZ, for Petitioner.

*Julia M. Collison*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION[1]

On July 28, 2023, Natalie Parsons filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa—10 through 34 (the "Vaccine Act"). Petitioner alleges that she suffered various injuries from a human papillomavirus ("HPV") vaccination, the third dose, she received on October 15, 2013. ECF No. 1 at 3.

Because the petition was untimely filed, and Petitioner has failed to establish a basis for equitable tolling, this case is **DISMISSED**.

## Relevant Factual Background

On October 15, 2013, Petitioner received the third dose of the HPV vaccine when she was twenty-five years old.[2] Exhibit 3.[3] Petitioner stated that after the vaccination she

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] Petitioner received the first two HPV vaccinations on April 26, 2013, and June 15, 2013, but she is only alleging that her symptoms began after the third HPV vaccination. ECF No. 1 ¶¶ 2, 4.

[3] Petitioner has not identified the vaccine administrator or the medical facility where the vaccination occurred in the petition or in her affidavits. The vaccination record provided by Petitioner is only a photo of

first developed mood swings and became irrationally and uncharacteristically angry. ECF No. 1 ¶ 4. Petitioner's sleep changed to the point where she became chronically fatigued and exhausted. *Id.* ¶ 5. Petitioner then developed various other symptoms: hot flashes, sexual issues, night sweats, vision changes, and menstrual issues. *Id.* ¶¶ 6-10. Petitioner was diagnosed with premature ovarian failure and menopause. *Id.* ¶ 11. Petitioner listed this sequence of symptoms but did not provide a timeline for the symptoms. Looking at one of the later symptoms in the sequence, menstrual issues, the medical records support that Petitioner stopped having a menstrual cycle in 2019. Exhibit 4 at 2. It is reasonable to infer that the earlier symptoms in the sequence occurred sometime between 2013 and 2019.

Facially, Petitioner's claim herein was filed almost *ten* years after her last HPV dose, which was administered in 2013, and almost *ten* years from the time she began manifesting symptoms or the symptoms were significantly aggravated. But Petitioner maintains her delay is excusable. Thus, in an affidavit dated July 28, 2023, Petitioner has attested that, at the time this vaccination occurred, no Vaccine Information Statement (VIS) was provided and no information was relayed about the Vaccine Program. Exhibit 1 ¶ 2. Petitioner only learned that the HPV vaccine might be capable of causing adverse effects in 2022 and contacted an attorney in April 2023. Exhibit 27 ¶ 6.

## Relevant Procedural History

Given that the timeliness of the claim was legitimately called into question merely by the face of the actual Petition, while the case was still in the initial "pre-assignment review,"[4] I ordered Petitioner to show cause why the claim had not been filed outside the Act's 36-month statute of limitations. Sec. 16(a)(2); ECF No. 11.

On November 21, 2023, Petitioner filed a response. ECF No. 15. Petitioner did not dispute the onset (or aggravation) of symptoms in 2013, or that her petition was filed in 2023 (and not sooner than 2016), but instead argued that the limitations period should be equitably tolled. Petitioner asserted that she had diligently pursued her rights once she became aware of her legal rights. Petitioner also made allegations not relevant to a Vaccine Act claim, about the perfidious conduct of the vaccine manufacturer in fraudulently concealing the HPV vaccine's harmful character from the public. ECF No. 15 at 25. Relatedly, Petitioner argued that the failure of a healthcare professional to provide her with a VIS at the time of vaccination can be attributed to the Department of Health

---

a small portion of a document that appears to be a vaccination history. Exhibit 3 at 2. This document not identify the vaccine administrator, medical facility, or even Petitioner herself.

[4] Pre-Assignment Review, or PAR, is a process utilized by the Office of Special Masters to assess whether a claim's primary evidentiary documentation has been filed. *See* notice at http://www.uscfc.uscourts.gov/vaccine-programoffice-special-masters.

and Human Services' failure to systematically ensure that VIS are explained and provided to all vaccine recipients. *Id.* at 9.

On January 9, 2024, Respondent submitted a responsive brief of his own, arguing for dismissal due to untimeliness. ECF No. 17. Respondent maintained that Petitioner in fact had not diligently pursued her rights before filing a vaccine claim in 2023. Respondent also disputed the veracity of contentions about the manufacturer's conduct, and whether it could in any event constitute an extraordinary circumstance that would serve as a basis for tolling of the statute.

On January 23, 2024, Petitioner filed a reply to Respondent's arguments. ECF No. 18. The reply generally reiterates Petitioner's prior arguments.

## **Legal Standards**

The Vaccine Act's statute of limitations is thirty-six months. Sec. 16(a)(2). The statute begins to run from the manifestation of the first objectively cognizable symptom, whether or not that symptom is sufficient for diagnosis (or even recognized by a claimant as significant). *Id.*; *Carson v. Sec'y of Health & Hum. Servs.*, 727 F.3d 1365, 1369 (Fed. Cir. 2013).

The Federal Circuit has held that the doctrine of equitable tolling can apply to Vaccine Act's statute of limitations. *See Cloer v. Sec'y of Health & Hum. Servs.*, 654 F.3d 1322, 1340-41 (Fed. Cir. 2011). However, in keeping with applicable U.S. Supreme Court precedent, equitable tolling of a limitations period is to be permitted "sparingly." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, (1990). The appropriateness of equitable tolling is ultimately to be determined on a case-by-case basis, without rigid application of any relevant overarching guidelines. *Holland v. Florida*, 560 U.S. 631, 649–50 (2010); *accord Arctic Slope Native Ass'n v. Sebelius*, 699 F.3d 1289, 1295 (Fed. Cir. 2012).

Petitioners must prove two elements to establish equitable tolling: (1) that petitioner diligently pursued her rights, and (2) an extraordinary circumstance prevented her from timely filing the claim. *K.G. v. Sec'y of Health & Hum. Servs.*, 951 F.3d 1374, 1379 (Fed. Cir. 2020) *(*citing *Menominee Indian Tribe v. United States*, 577 U.S. 250, 255 (2016)). When first articulating this limited exception to equitable tolling, the Federal Circuit primarily enumerated fraud and duress as a basis for equitable tolling—but not, for example, *lack of awareness* on a petitioner's part that she might have an actionable claim. *Cloer*, 654 F.3d at 1344–45 (noting that tolling of the Vaccine Act's statute of limitations period is not triggered "due to unawareness of a causal link between an injury and administration of a vaccine").

## **Analysis**

The untimeliness of this filing is acknowledged by Petitioner, so the only question to be resolved is whether equitable tolling should save the claim. But Petitioner has failed to establish both elements of equitable tolling – diligent pursuit and extraordinary circumstances.

### A) *Diligent pursuit*

Petitioner was twenty-five years old when she received the October 15, 2023 HPV vaccination. Petitioner argues that she was impeded by the failure of the vaccine administrator to provide her with a VIS or any other information about the Vaccine Program. Petitioner only began to diligently pursue a vaccine claim in 2022 after she learned that the HPV vaccine could have adverse effects and sought legal counsel in April 2023.

These arguments are wholly unpersuasive. It is beyond question that claims asserted in the Vaccine Program are not subject to a "discovery rule," accruing only when a claimant *learns* he or she might possess a cause of action. Rather, the statute of limitations period is triggered by the onset of Petitioner's symptoms – whether or not onset was understood to be the start of the claimed injurious illness or condition. *Cloer v. Sec'y of Health & Hum. Servs.*, 654 F.3d 1322, 1340 (Fed. Cir. 2011) (en banc). And the failure to be advised of the Vaccine Program or the Act does not support equitable tolling of the statute of limitations period for an otherwise-untimely filed petition. *Speights v. Sec'y of Health & Hum. Servs.*, No. 03-2619V, 2013 WL 5944084, at *13 (Fed. Cl. Spec. Mstr. Oct. 17, 2013). Thus, a petitioner cannot generally shield an untimely claim from dismissal by asserting, even in good faith, that she literally was unaware of her Vaccine Act "rights."

### B) *Extraordinary Circumstances*

Petitioner's arguments about the purported fraudulent conduct of the vaccine's manufacturer, in hiding proof of the vaccine's dangers, deserve even less consideration. ECF No. 15 at 22. As a threshold matter, these contentions are speculative and not evidentiarily-supported. And regardless of their actual truth, the fact remains that the Government *has approved* the HPV vaccine for administration to minors, rendering it "covered" under the Act. The only issue to be resolved in a Program case is whether (assuming, as here, the claim is not a Table claim) the claim meets the standards for causation – and those standards have nothing to do with a manufacturer's alleged misconduct in preparation or promotion of the underlying vaccine.

These allegations also are not a basis for tolling under the circumstances. Petitioner simply has not shown that contentions of corporate misconduct not specific to,

4

or directed at, her personally could rise to the level of the kind of "fraud" that might excuse failing to file a Program claim in a timely manner. Nor has she persuasively established that the vaccine administrator's "failure to warn," or provide a VIS in 2013, is an extraordinary circumstance. Even assuming the factual accuracy of that allegation,[5] it remains the case (as the Circuit recognized in *Cloer*) that vaccine claims accrue upon onset – and that the failure to be advised of the Vaccine Program does not support equitable tolling. *Cloer,* 654 F.3d at 1340; *see also Speights,* 2013 WL 5944084, at *13. And arguments about governmental agency knowledge of a failure to warn reflect overheated, almost-conspiratorial allegations that do not come close to excusing the claim's untimely nature.

Finally, Petitioner also asserts that the safety of the HPV vaccine is "heavily disputed and should not be resolved on these papers alone." ECF No. 18 at 7. But this argument willfully ignores the extent to which I have personally ruled in numerous prior cases that medical science does not preponderantly support the contention that the HPV vaccine can cause various autonomic issues. S*ee,* e.g., *Hughes v. Sec'y of Health & Hum. Servs.*, No. 16-930V, 2021 WL 839092, at *31 (Fed. Cl. Spec. Mstr. Jan. 4, 2021), *mot. for review denied*, 154 Fed. Cl. 640 (2021); *E.S. v. Sec'y of Health & Hum. Servs.*, No. 17-480V, 2020 WL 9076620, at *40, 43 (Fed. Cl. Spec. Mstr. Nov. 13, 2020), *mot. for review denied*, 154 Fed. Cl. 149 (2021); *McKown v. Sec'y of Health & Hum. Servs.*, No. 15-1451V, 2019 WL 4072113, at *44–45 (Fed. Cl. Spec. Mstr. July 15, 2019). The Act does not require that the same theory rejected so many times before must be relitigated by the Program ad infinitum (especially in the absence of new compelling evidence). Rather, special masters are expressly empowered to rely on their expertise, earned in adjudicating Program cases, in subsequent similar matters. To suggest that they should ignore what they have learned in that process reveals a complete miscomprehension of the Program's underlying goals and purposes.

## Conclusion

Thus, Petitioner has failed to establish equitable tolling. **This case is dismissed for being untimely filed. The Clerk of Court shall enter judgment accordingly.**[6]

---

[5] As noted above, Petitioner has at most submitted a vaccination history to document the October 15, 2023 HPV vaccination. Exhibit 3 at 2. Again, this vaccination history does not identify the vaccine administrator, medical facility, or even Petitioner herself. Medical providers typically note in vaccine administration appointment records whether vaccine counseling or a VIS has been provided to a patient. Petitioner has not identified the vaccine administrator and has not submitted the vaccine administration appointment records. The only evidence that no VIS or information about the Vaccine Program was provided is Petitioner's affidavit dated July 28, 2023, in which she attested about events that occurred almost ten years earlier. Exhibit 1 ¶ 2.

[6] If Petitioner wishes to bring a civil action, she must file a notice of election rejecting the judgment pursuant to § 21(a) "not later than 90 days after the date of the court's final judgment."

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master
